1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

7
8
9

| RONALD D. NIELSEN, | ) | |
| | ) | |
| Plaintiff, | ) | NO.:  13-cv-01717 RSM |
| | ) | |
| v. | ) | **PLAINTIFF'S SECOND AMENDED** |
| | ) | **COMPLAINT** |
| UNUM LIFE INSURANCE COMPANY OF | ) | |
| AMERICA, UNUM GROUP CORPORATION, | ) | |
| CATHOLIC HEALTH INITIATIVES, | ) | |
| CATHOLIC HEALTH INITIATIVES PLAN | ) | |
| OR CATHOLIC HEALTH INITIATIVES | ) | |
| WELFARE BENEFIT PLAN , AND | ) | |
| FRANCISCAN HEALTH SYSTEM, | ) | |
| | ) | |
| Defendants. | ) | |

Ronald D. Nielsen, through his counsel, T. Jeffrey Keane and Keane Law Offices, for

his Second Amended Complaint against defendants alleges as follows.  Dr. Nielsen files this

Second Amended Complaint as directed by the Court's September 2, 2014 Order (Dkt. # 41,

at 20).

//

//

//

**PARTIES**

1.    Plaintiff Ronald D. Nielsen, M.D. is and was at all relevant times a resident of

Tacoma, Washington.  From May 4, 2005 until May 21, 2010, Dr. Nielsen was employed as a

Hospice and Palliative Medicine Physician by defendant Franciscan Health System ("FHS").

2.    Defendant FHS is a nonprofit corporation incorporated under the laws of

Washington, with its principal place of business in Tacoma, Washington.  Dr. Nielsen worked

at Franciscan Hospital, a community hospital operated by FHS in Federal Way.  FHS is

affiliated with defendant Catholic Health Initiatives.

3.    Defendant Catholic Health Initiatives ("CHI") is a nonprofit corporation

incorporated under the laws of Colorado, with its principal place of business believed to be in

Englewood, Colorado.  CHI provided a Long-Term Disability (LTD) benefits plan to its

employees and to employees of its affiliated organizations, including FHS.  FHS operates

hospitals and medical clinics in King County and Pierce County, Washington.  CHI is and

was at all times material to this complaint the Plan Administrator for this LTD Plan.  The

LTD Plan was funded through an insurance policy ("the policy" or "the LTD policy") issued

by Defendant Unum Life Insurance Company of America ("Unum Life").  Dr. Nielsen was a

participant in this LTD plan and a beneficiary of the policy.  CHI also sponsored and

administered a Short-Term Disability (STD) program known as the Catholic Health Initiatives

Salary Continuation Program ("STD Program").  Through this STD Program, CHI provided

STD benefits to its employees and to employees of its affiliated organizations, including FHS.

CHI was the Program Administrator for its STD Program.  Dr. Nielsen was a participant in

the STD program. CHI had the responsibility for paying benefits to which participants were

entitled under the STD program.

4.     Defendant Catholic Health Initiatives Plan or Catholic Health Initiatives Welfare Benefit Plan ("the LTD Plan") is an employee welfare benefit plan established to provide LTD benefits to employees of CHI and affiliated organizations such as FHS.  Dr. Nielsen was a participant in the LTD Plan.

5.     Defendant Unum Life Insurance Company of America ("Unum Life") is incorporated in the State of Maine and has its principal place of business in Portland, Maine. Unum Life is a wholly-owned subsidiary of Unum Group Corporation.  The LTD Plan was funded by insurance issued by Unum Life under policy number 120265-114.  As the insurer of the LTD Plan, Unum Life was and is obligated to pay benefits to which participants are entitled under the LTD Plan.

6.     CHI and the LTD Plan delegated to Unum Life and Unum Group (described below) the authority and responsibility for making benefit determinations under the LTD Plan.  Unum Life and Unum Group made benefits determinations under the LTD Plan.  In other words, Unum Life and Unum Group decided whether any given claim would be paid, the amount of the payments, and the duration of the payments.  Unum Life and Unum Group continue to perform this function.  Unum Life and Unum Group made the benefit decisions denying Dr. Nielsen's claim for LTD benefits.  The STD Program identified "Unum" as the Claims Administrator for that program.   Both the initial denial of Dr. Nielsen's STD claim and the denial of his appeal concerning the STD claim were described in letters bearing the "Unum" letterhead and the explanation that "Unum is a registered trademark and marketing brand of Unum Group and its insuring subsidiaries."   Thus, Unum Life, as one of Unum's Group's insuring subsidiaries, made or participated in these decisions.

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington  98105
206-438-3737 • Facsimile 206-632-2540

7.      Defendant Unum Group Corporation ("Unum Group") is incorporated in the State of Delaware and has its principal place of business in Chattanooga, Tennessee.   Unum Group is the largest disability insurer in the world.  As noted above, CHI and the LTD Plan delegated to Unum Group (along with Unum Life) the authority and responsibility for making benefit determinations under the LTD Plan. Along with Unum Life, Unum Group in fact made those determinations, including the decisions to deny Dr. Nielsen's claim for LTD benefits.  The STD Program identified "Unum" as the Claims Administrator for that program. Both the initial denial of Dr. Nielsen's STD claim and the denial of his appeal concerning the STD claim were described in letters bearing the "Unum" letterhead and the explanation that "Unum is a registered trademark and marketing brand of Unum Group and its insuring subsidiaries." Thus, Unum Group made or participated in these decisions.

## JURISDICTION AND VENUE

8.      Unum Life is authorized by the Washington Insurance Commissioner to sell, and does sell, insurance in Washington.   Unum Life transacts a substantial amount of business within the State of Washington and has had continuous and systematic general business contacts with Washington for many years.  Unum Life has appointed large numbers of agents and agencies in the State of Washington to sell insurance on its behalf.  Pursuant to RCW 48.05.200, Unum Life has appointed the Washington Insurance Commissioner as its agent for service of process in causes of action arising within Washington.  In addition, Unum Life issued the LTD policy that funded the LTD Plan.  That policy, in turn, covered hundreds of employees of FHS who lived and worked in the State of Washington, including King County.  In addition, Unum Life made the decisions, described more fully below, to deny Dr. Nielsen's claim for LTD benefits and to deny his appeal.   This Court has jurisdiction over the

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington  98105
206-438-3737 • Facsimile 206-632-2540

person of Unum Life. Unum Life transacts a substantial part of its usual and ordinary business in King County, Washington and did so at all times material to this action. Unum Life also has offices in King County for transaction of business. Venue is proper in this Court.

9. Through its wholly owned subsidiary Unum Life, Unum Group transacts a substantial amount of business within the State of Washington, has had continuous and systematic general business contacts with Washington for many years, and has appointed large numbers of agents and agencies in the State of Washington to sell insurance on its behalf. In addition, Unum Group made the decisions, described more fully below, to deny Dr. Nielsen's claim for LTD benefits and to deny his appeal. Both of these decisions concerning the LTD claim were described in letters bearing the "Unum" letterhead and the explanation that "Unum is a registered trademark and marketing brand of Unum Group and its insuring subsidiaries." Unum Group also made, and continues to make, decisions about eligibility for benefits under the LTD plan affecting hundreds of employees of FHS living and working in the State of Washington, including King County. In addition, Unum Group was the Claim Administrator for the STD Program. Unum Group also made the decisions, described more fully below, to deny Dr. Nielsen's claim for STD benefits and to deny his appeal for those benefits. Both of these decisions concerning the STD claim were described in letters bearing the "Unum" letterhead and the explanation that "Unum is a registered trademark and marketing brand of Unum Group and its insuring subsidiaries." Unum Group transacts a substantial part of its usual and ordinary business in King County, Washington and did so at all times material to this action. Unum Group also has offices in King County for transaction of business. This Court has jurisdiction over the person of Unum Group.

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington 98105
206-438-3737 • Facsimile 206-632-2540

1    10.    The LTD Plan covered and continues to cover hundreds of employees of FHS

2 living and working in the State of Washington, including King County.  The LTD Plan

3 transacts a substantial amount of business within the State of Washington and has had

4 continuous and systematic general business contacts with Washington for many years. This

5 Court has jurisdiction over the person of the LTD Plan.

6    11.    CHI contracted with Unum Life for Unum to provide insurance for hundreds

7 of employees of FHS living and working in the State of Washington, including King County.

8 CHI was the Plan Administrator for the LTD Plan at the time that Dr. Nielsen's claim for

9 LTD benefits was denied.  CHI continues to be the Plan Administrator for the LTD Plan.  As

10 the Administrator of the LTD Plan, CHI takes actions that affect hundreds of employees of

11 FHS living and working in the State of Washington, including King County.  Through its

12 affiliate FHS, CHI operates multiple medical facilities in the State of Washington.  CHI

13 transacts a substantial amount of business within the State of Washington and has had

14 continuous and systematic general business contacts with Washington for many years. CHI

15 was also the Program Administrator for the STD Program.  As the Program Administrator of

16 the STD Program, CHI took actions that affected hundreds of employees of FHS living and

17 working in the State of Washington. This Court has jurisdiction over the person of CHI.

18    12.    Defendant FHS is Washington nonprofit corporation and has its principal place

19 of business in Washington.  FHS operates multiple medical facilities in King County,

20 Washington and transacts a substantial part of its usual and ordinary business in King County,

21 and did so at all times material to this action.  This Court has jurisdiction over the person of

22 FHS.  Venue is proper in this Court.

23

24

25

SECOND AMENDED COMPLAINT - 6

13.    Dr. Nielsen originally filed this action in the Superior Court of Washington for King County.    Unum Life and Unum Group removed the action to this Court on federal question grounds, contending that the Employee Retirement Income Security Act ("ERISA"), 29 USC § 1001 et seq., applies to this case.    In an Order dated September 2, 2014, the Court determined that the LTD Plan is governed by ERISA and that based on ERISA the Court has federal question jurisdiction over this action.    Dkt. # 41.

### THE TERMINATION OF DR. NIELSEN'S EMPLOYMENT BY FHS, HIS INABILITY TO WORK SINCE THAT TIME, AND HIS HISTORY OF DIFFICULTIES IN THE WORKPLACE DUE TO HIS ILLNESSES

14.    From May 4, 2005 until May 21, 2010, Plaintiff was employed as a Hospice and Palliative Medicine Physician by FHS.    Dr. Nielsen worked at St. Francis Hospital, a community hospital operated by FHS in Federal Way. On May 21, 2010, FHS fired Dr. Nielsen from his job.    He was fired for difficulties with attention, concentration, and working memory, and for inability to follow through in a timely manner.    He was 55 years old at the time he was fired.

15.    With extremely limited exceptions of very short duration, Dr. Nielsen has been continuously unable to find any gainful employment as a physician since the termination of his employment by FHS on May 21, 2010.

16.    Before he began working for FHS in 2005, Dr. Nielsen had had difficulty meeting the performance standards in other jobs where he worked as a physician.    For example, after working for a small private medical practice in Brewster, Washington for about three years, Dr. Nielsen was asked to leave.    His wife, who is also a physician, worked in the same practice but was asked to stay.    It was only due to her assistance that he was able to maintain his employment there for as long as he did.    When Dr. Nielsen left that practice in

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington 98105
206-438-3737 • Facsimile 206-632-2540

Brewster after being asked to leave, his wife voluntarily left also. The two of them opened their own practice in Brewster, which they operated from 1996 to 2000. During this time, Dr. Nielsen's wife helped him considerably with organizational and administrative matters and helped to provide a highly structured environment for his work. In the period between 2000 and 2005, Dr. Nielsen worked in three different jobs, holding each one for only a relatively short time. His employment in at least one of these three jobs was involuntarily terminated. Dr. Nielsen's difficulty in holding a job during the years before 2005 was due to the same problems with attention, focus, concentration, organization, working memory, anxiety, slow processing, sequencing, understanding priorities, and inability to pick up on social cues that caused him to lose his job at FHS.

### UNUM'S DENIAL OF DR. NIELSEN'S CLAIM FOR STD BENEFITS

17.     Dr. Nielsen was covered by the STD Program. In June 2010 Dr. Nielsen submitted a claim for STD benefits to Unum.

18.     The STD program defined "disabled" as follows:

You are disabled when Unum determines that:
- you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
- you have a 20% or more loss in **weekly earnings** due to that same sickness or injury.

19.     The STD program defined "**LIMITED**" as "what you cannot or are unable to do."

20.     The STD program defined "**MATERIAL AND SUBSTANTIAL DUTIES**" in pertinent part as

duties that:
- are normally required for the performance of your regular occupation; and
- cannot be reasonably omitted or modified.

SECOND AMENDED COMPLAINT - 8

21.     The STD program defined "**REGULAR OCCUPATION**" as

the occupation you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

At the time Dr. Nielsen's disability began, his "regular occupation" was Hospice and Palliative Medicine Physician.

22.     The STD program defined "**SICKNESS**" as "an illness or disease."

23.     Under STD program, beginning 7 days after the commencement of his disability, Dr. Nielsen was entitled to be paid his full salary as long as he met the definition of "disabled," for a period of 90 days.  It is undisputed that Dr. Nielsen was unable to find work during that period.

24.     On June 11, 2010, Dr. Nielsen's treating psychiatrist, Dr. Debra Hughes, filled out a Unum disability claim form.  Dr. Hughes concluded that the "primary diagnosis preventing the patient from working," was Adult Attention Deficit Disorder.  She checked "yes" in answer to the question "Are there any cognitive deficits or psychiatric conditions that impact function?"  She described Dr. Nielsen's restrictions and limitations as "poor attention, poor concentration, poor working memory, problems with organization and follow through, forgetful."  Dr. Hughes concluded that these limitations resulted in the loss of Dr. Nielsen's job.  The form asked Dr. Hughes to note the patient's Axis V level as described in the DSM IV.  The DSM IV is a reference to the "Diagnostic and Statistical Manual of Mental Disorders," 4th ed., published by the American Psychiatric Association.  According to the DSM IV, Axis V measures the patient's "Global Assessment Functioning" level. This is a 100-point scale that the mental health professional uses to describe the patient's overall level of psychological, social, and occupational functioning.  On this 100-point scale, Dr. Hughes

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington  98105
206-438-3737 • Facsimile 206-632-2540

rated Dr. Nielsen at "45-50 (job loss)." According to the DSM IV, a person with a GAF rating of anywhere from 41 to 50 has "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR <u>any serious impairment in</u> social, <u>occupational,</u> or school <u>functioning (e.g., no friends, unable to keep a job)</u>" (emphasis added). In other words, in Dr. Hughes' opinion, Dr. Nielsen's Attention Deficit Disorder was a serious impairment that rendered him unable to keep a job.

25. Dr. Hughes filled out another Unum disability claim form on June 12, 2010. In addition to repeating some of her statements from the June 11, 2010 form, Dr. Hughes identified the "other conditions that prevent the patient from working" as "anxiety, depression, social awareness deficits." Dr. Hughes's secondary diagnoses were "major depressive disorder recurrent moderate" and "Generalized Anxiety Disorder." Again, Dr. Hughes checked "yes" in answer to the question "Are there any cognitive deficits or psychiatric conditions that impact function?" She described Dr. Nielsen's restrictions and limitations as "severe difficulties with attention, focus, concentration, organization, working memory, hyper____at times, anxiety, misses priorities and social cues from others, slow processing [and] prob[lems]s sequencing." Dr. Hughes noted that these restrictions and limitations were the reason for his recent job loss and had been a lifelong problem for Dr. Nielsen. Dr. Hughes further noted that Dr. Nielsen's recent loss of his job was yet another job failure and that he had failed repeatedly in various medical settings not through lack of intelligence but due to problems with organization and administration. Dr. Hughes added that Dr. Nielsen was "weak with complex processing skills and attention," that his "reading performance is lower and slower," that his "ability to organize himself is impaired," that

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington 98105
206-438-3737 • Facsimile 206-632-2540

"social cues are not often picked up so he frequently has trouble adjusting behavior accordingly," and that "he is truly mystified by what has happened."

26.     Nevertheless, Unum denied Dr. Nielsen's STD claim in a letter dated June 25, 2010. It was undisputed that Dr. Nielsen had not worked since May 21, 2010, and that he had no earnings during that time. Unum denied the claim because "you did not stop working because you were instructed to do so by a medical professional." Unum ignored Dr. Hughes's diagnoses and her conclusion that Dr. Nielsen's severe difficulties with attention, focus, concentration, organization, sequencing, working memory, anxiety, understanding priorities, picking up on social cues from others, and his weak processing skills were precisely what had caused him to be fired from his most recent job and were what had caused him to lose other jobs in the past.

27.     Dr. Nielsen appealed Unum's denial of his claim for STD benefits. On June 27, 2011 Unum denied his appeal. Unum concluded that Dr. Nielsen did "not have any restrictions and limitations that would prevent him from working at the time that he cease [sic] work." Again, Unum relied on the nonsensical notion that Dr. Nielsen was disabled only if his physician advised him to cease work. There was no such requirement in the language of the STD Program. Instead, the STD Program's definition of "disabled" was simply that the claimant simply be unable to perform the duties that were normally required for his regular occupation.

28.     In denying the STD appeal, Unum simply ignored or summarily dismissed the conclusions of Dr. Hughes, as described in the June 11 and June 12, 2010 statements she had submitted.

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington 98105
206-438-3737 • Facsimile 206-632-2540

29.     In denying the STD appeal, Unum did not contend that Dr. Hughes's diagnoses of Adult Attention Deficit Disorder, Major Depressive Disorder, and Anxiety Disorder were incorrect.  Unum offered no specific evidence to refute Dr. Hughes's conclusion that Adult Attention Deficit Disorder was preventing the patient from working.  Unum offered no specific evidence to refute Dr. Hughes' conclusion that "other conditions that prevent the patient from working" were "anxiety, depression, social awareness deficits."

30.     In denying the STD appeal, Unum made reference to a neuropsychological evaluation of Dr. Nielsen performed in June 2010 by Dr. David Fordyce.  Unum ignored Dr. Fordyce's conclusion that Dr. Nielsen's neuropsychological test results were consistent with Attention Deficit Disorder – Inattentive Type and a Mood Disorder with anxious and depressed features.   Unum ignored Dr. Fordyce's conclusion that:

"[H]e would have the best chance of vocational success is [sic] settings that are relatively even paced, structured, and perhaps more linear in nature.  He will likely function better in settings with minimal distractions or interruptions, a state of affairs that would be difficult [to] obtain in standard clinical environments."   Unum also ignored the following conclusions expressed by Dr. Fordyce on June 14:

> I believe he does possess some impairment in information processing (complex attention and processing speed) that are subtle and hard to measure on neuropsychological testing – though there certainly is an indication of their presence.  He also appears to struggle with social intelligence in a way that likely has also compromised his vocational function.  Finally, general mood is anxious and at least mildly depressed.  These impairments have likely been longstanding, and it sounds like they have impacted in some way virtually every medical environment he has worked in.  He clearly has failed at several positions he has worked in, including the most recent. . . . Diagnostically, the history and test results are most consistent with Attention Deficit Disorder – Inattentive Type and a Mood Disorder with anxious and depressed features.

> I believe that he should complete his application for long-term disability income.  At the same time, I think he should continue to look for work – but

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington  98105
206-438-3737 • Facsimile 206-632-2540

only in a setting that could accommodate his impairments. It will be a challenge to locate a good employment fit. . . . If he is going to have any chance of successful work, it will need to be in a setting that is inherently structured and organized, or provides some accommodation that helps with the difficulties in attention, organization, and effective management of the administrative structure.

31. After Unum denied the appeal of his STD claim, Dr. Nielsen continued to provide Unum with additional information establishing that he was in fact disabled during the period for which STD benefits were payable. Up to the time of the filing of this complaint, however, Unum has continued to deny that Dr. Nielsen is entitled to any STD benefits.

## **UNUM'S DENIAL OF DR. NIELSEN'S CLAIM FOR LTD BENEFITS**

36. Dr. Nielsen was covered by the LTD Plan.

37. The insurance policy ("policy" or "LTD policy") issued by Unum Life pursuant to the LTD Plan defined "disabled" as follows:

You are disabled when Unum determines that:
- you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
- you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.
. . .
You must be under the regular care of a physician to be considered disabled.

Since May 21, 2010, Dr. Nielsen has continuously had a 20% or more loss in his "indexed monthly earnings," as that term is defined in the policy. Since May 21, 2010, Dr. Nielsen has been continuously under the regular care of a physician.

38. The policy defined "**LIMITED**" as "what you cannot or are unable to do."

39. The policy defined "**MATERIAL AND SUBSTANTIAL DUTIES**" as

duties that:
- are normally required for the performance of your regular occupation; and
- cannot be reasonably omitted or modified.

40. The policy defined "**REGULAR OCCUPATION**" as

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington 98105
206-438-3737 • Facsimile 206-632-2540

the occupation you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

At the time Dr. Nielsen's disability began, his "regular occupation" was Hospice and Palliative Medicine Physician.

41.    The policy defined **"SICKNESS"** as

an illness or disease.  Disability must begin while you are covered under the plan."

42.    Dr. Nielsen filed a claim for LTD benefits under the LTD Plan.  In a letter dated April 20, 2012, Unum denied that claim.  As it did in denying Dr. Nielsen's STD claim, Unum concluded that Dr. Nielsen was not disabled under the LTD policy because his medical care providers had not advised him to leave work.  Again, however, nothing in the LTD policy's definition of "disabled" required that a claimant's care providers tell him not to work. The relevant question is whether, due to an illness, the claimant is unable to perform the duties normally required for the performance of his regular occupation claimant.   Unum also based its decision on the fact that Dr. Nielsen had attempted to find work as a physician. Nothing in the policy states that a claimant cannot be considered disabled if he is seeking to find work in his occupation.

43.    Unum also denied Dr. Nielsen's LTD claim because the State had taken no action against his medical license.  The suggestion was that a physician is not disabled as long as the State in which he or she practices has taken no action against his or her medical license. There is nothing in the LTD policy's definition of "disabled" to support this position.

44.    Unum acknowledged the opinion of Dr. Nielsen's treating psychiatrist, Dr. Debra Hughes, that Dr. Nielsen was unable to perform the duties of a physician due to his

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington  98105
206-438-3737 • Facsimile 206-632-2540

psychiatric impairment. But Unum dismissed this opinion entirely. Its reasoning for dismissing Dr. Hughes' was as follows: "Dr. Hughes noted you always performed well with clinical work and that absent administrative duties such as time constraints and paperwork, you are able to care for patients and their families in a very therapeutic fashion." The issue is not whether Dr. Nielsen was a threat to the safety of patients with whom he was able to spend large amounts of time. The issue was, and is, whether Dr. Nielsen's psychiatric condition rendered him unable to perform the duties normally required for the performance of his regular occupation. Unum's position would make sense only if administrative duties, time constraints, and paperwork were not part of the duties normally required of a physician in a modern medical practice. But dealing with administrative responsibilities, dealing successfully with time constraints, and completing paperwork *are* duties normally required of a physician in a modern medical practice. Unum cited no evidence suggesting otherwise.

45. In denying Dr. Nielsen's claim, Unum relied on a comment by Dr. Nielsen's psychotherapist, Dr. Brad Bates, that while Dr. Nielsen had limitations as a physician, he was not unfit for duty as a doctor. Unum's reliance on this observation is yet another example of its faulty logic and unreasonable conclusion. The premise for Unum's denial of Dr. Nielsen's claim was that as long as a physician is not so cognitively or psychologically impaired as to be totally unfit to act as a physician in any setting, then the physician is not disabled. But again, that premise is not supported by the LTD policy's definition of "disabled." If given unlimited amounts of time to spend with each patient, if not required to remember information about multiple patients, if not required to complete chart notes concerning multiple patients in a short time frame, if not required to respond appropriately and in a timely fashion to colleagues and other staff members, if not required to remember to bring his pager to the

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington 98105
206-438-3737 • Facsimile 206-632-2540

hospital, if not required to show up on time, if not required to perform other routine administrative duties, and if not required to demonstrate an excellent working memory and an ability to screen out distractions, a physician like Dr. Nielsen may indeed be "fit" to practice medicine in the sense of appropriately diagnosing and treating an extremely limited number of patients. But the ability to perform all of these duties is normally required of every physician in every modern medical facility. Moreover, Dr. Bates diagnosed Dr. Nielsen as suffering from Attention-Deficit/Hyperactivity Disorder, Primarily Inattentive Type, as well as Dysthymic Disorder (an overwhelming, chronic state of depression), acknowledged that Dr. Nielsen can become flustered in situations like morning rounds that require rapid information processing, and recognized that Dr. Nielsen's cognitive and psychological impairments limited his abilities as a physician.

46. In denying Dr. Nielsen's LTD claim, Unum also claimed that a neuropsychological evaluation conducted by Dr. David Fordyce in June 2010 did not support the conclusion that Dr. Nielsen was disabled. Dr. Nielsen was referred to Dr. Fordyce for evaluation by the Washington Physicians' Health Program (WPHP). FHS – Dr. Nielsen's employer until May 21, 2010 -- referred Dr. Nielsen to WPHP. WPHP, in turn, sent Dr. Nielsen to Dr. Fordyce for evaluation.

47. As Unum acknowledged, Dr. Fordyce concluded that Dr. Nielsen's neuropsychological test results were consistent with Attention Deficit Disorder – Inattentive Type and a Mood Disorder with anxious and depressed features. As Unum also acknowledged, Dr. Nielsen's performance on more complex measures of processing speed, attention, and reading comprehension ranged from below average to average. Dr. Fordyce concluded his initial June 7, 2010 report by saying:

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington 98105
206-438-3737 • Facsimile 206-632-2540

[H]e would have the best chance of vocational success is [sic] settings that are relatively even paced, structured, and perhaps more linear in nature. He will likely function better in settings with minimal distractions or interruptions, a state of affairs that would be difficult [to] obtain in standard clinical environments.

48. On a June 14, 2010 report, which was in Unum's file at the time it denied Dr. Nielsen's LTD claim, Dr. Fordyce wrote:

I believe he does possess some impairment in information processing (complex attention and processing speed) that are subtle and hard to measure on neuropsychological testing – though there certainly is an indication of their presence. He also appears to struggle with social intelligence in a way that likely has also compromised his vocational function. Finally, general mood is anxious and at least mildly depressed. These impairments have likely been longstanding, and it sounds like they have impacted in some way virtually every medical environment he has worked in. He clearly has failed at several positions he has worked in, including the most recent. . . . Diagnostically, the history and test results are most consistent with Attention Deficit Disorder – Inattentive Type and a Mood Disorder with anxious and depressed features.

I believe that he should complete his application for long-term disability income. At the same time, I think he should continue to look for work – but only in a setting that could accommodate his impairments. It will be a challenge to locate a good employment fit. . . . If he is going to have any chance of successful work, it will need to be in a setting that is inherently structured and organized, or provides some accommodation that helps with the difficulties in attention, organization, and effective management of the administrative structure.

Dr. Nielsen's inability to maintain a job as a physician is not due to a lack of natural intelligence. Indeed, Dr. Fordyce found that on one measure of intelligence Dr. Nielsen was in the 93rd percentile and on another measure was in the 95th percentile.

49. In addition, Dr. Fordyce completed a Unum disability claim form on November 15, 2011. This form was in Unum's file at the time it denied Dr. Nielsen's LTD claim. In the claim form he completed on November 15, 2011, Dr. Fordyce stated that the "primary diagnosis preventing the patient from working," was "ADHD [Attention-Deficit/Hyperactivy Disorder], Mood Disorder with anxiety & depression." His secondary

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington 98105
206-438-3737 • Facsimile 206-632-2540

diagnosis was "poor social awareness, poor self-esteem." Dr. Fordyce checked "yes" in answer to the question "Are there any cognitive deficits or psychiatric conditions that impact function?" Asked to identify the "diagnostic or clinical findings [that] support your diagnosis," Dr. Fordyce wrote: "work history, neuropsychological evaluation results."

50.     The Unum claim form asked Dr. Fordyce to note the patient's Axis V level as described in the DSM IV. On the 100-point Global Assessment Functioning scale used to describe the patient's overall level of psychological, social, and occupational functioning, Dr. Fordyce rated Dr. Nielsen at 50. Again, according to the DSM IV, a person with a GAF rating of anywhere from 41 to 50 has "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)" (emphasis added).

51.     In the November 15, 2011 claim form, Dr. Fordyce described Dr. Nielsen's restrictions and limitations as "He would require a supported & structured working setting to succeed." Dr. Fordyce concluded by saying:

> Dr. Nielsen would likely be able to work as a physician only in a highly organized & supported work environment. He has not been able to attend to, remember, and follow the normal structure of the medical environments he has worked in.

Asked to state when he expected improvement in the patient's functional capacity, Dr. Fordyce supplied no answer.

52.     In summary, Dr. Fordyce concluded:

- that Dr. Nielsen suffered from Attention Deficit Disorder – Inattentive Type and a Mood Disorder with anxious and depressed features, and that these disorders were preventing him from working;

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington  98105
206-438-3737 • Facsimile 206-632-2540

- that as a result of these conditions Dr. Nielsen's overall level of functioning was at a level indicating a serious impairment in occupational functioning;

- that Dr. Nielsen's performance on more complex measures of processing speed, attention, and reading comprehension ranged from below average to average, and that his information processing was impaired;

- that Dr. Nielsen's impaired social intelligence had likely compromised his vocational function;

- that all of these disorders and impairments had likely impacted virtually every medical environment in which Dr. Nielsen had worked, and that Dr. Nielsen had not been able to attend to, remember, and follow the normal structure of the medical environments in which he had worked;

- that Dr. Nielsen's only chance of maintaining employment as a physician would be in a setting that presents minimal distractions or interruptions and that is inherently structured and organized, or provides some accommodation that helps with his difficulties in attention, organization, and effective management of the administrative structure; and

- that such a setting would be difficult to find in standard clinical environments.

53.     Nevertheless, in its April 20, 2012 denial of Dr. Nielsen's LTD claim, Unum concluded that Dr. Nielsen had neither "cognitive deficits or a behavioral health condition that would preclude you from performing the material and substantial duties of your own occupation." Ignoring or dismissing the conclusions of Dr. Hughes and Dr. Fordyce, Unum instead chose to base its decision on the opinions of Unum's "onsite physicians" – i.e., physicians on Unum's payroll who never met or tested Dr. Nielsen. In the opinion of these

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington 98105
206-438-3737 • Facsimile 206-632-2540

"onsite physicians," the information they reviewed did not support the conclusion "that you ceased work and remained out of work as the result of impairing psychiatric illness."

54.    In a letter dated March 18, 2013, Unum denied Dr. Nielsen's appeal of Unum's initial decision on his LTD claim.

55.    Unum's rejection of the LTD appeal denial did not even mention the findings of Dr. Debra Hughes, Dr. Nielsen's treating psychiatrist in 2010.  In June 2010, Dr. Hughes:

- determined that the "primary diagnosis prevent[ing] the patient from working," was Adult Attention Deficit Disorder;

- observed that there were cognitive deficits or psychiatric conditions that impacted Dr. Nielsen's function;

- noted that Dr. Nielsen's restrictions and limitations were "severe difficulties with attention, focus, concentration, organization, working memory, hyper____at times, anxiety, misses priorities and social cues from others, slow processing [and] prob[lems]s sequencing";

- concluded that these limitations resulted in the loss of Dr. Nielsen's job;

- on the 100-point Global Assessment Functioning scale, rated Dr. Nielsen's functioning at "45-50 (job loss)", meaning that he had a serious impairment in occupational functioning; and

- observed that "other conditions that prevent the patient from working" were "anxiety, depression, social awareness deficits."

56.    Unum's denial of Dr. Nielsen's appeal mentioned Dr. Fordyce's June 2010 evaluation and acknowledged Dr. Fordyce's diagnosis of Attention Deficit Disorder – Inattentive Type and a Mood Disorder with anxious and depressed features.  But Unum

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington  98105
206-438-3737 • Facsimile 206-632-2540

completely ignored all of Dr. Fordyce's conclusions as described in paragraphs 45 through 50 above.

57.     In denying the LTD appeal, Unum claimed that Dr. Nielsen's "history" did not support the diagnosis of attention deficit disorder because what Dr. Nielsen reported to various medical professionals over the last few years did not refer to behaviors often seen in children impaired with attention deficit disorder.   In other words, Unum concluded that Dr. Nielsen has not suffered from attention deficit disorder in the years 2010-2013 simply because Dr. Nielsen himself did not say that he displayed symptoms of the disorder as a child.   This is ludicrous.   The earliest record of any psychological or psychiatric evaluation of Dr. Nielsen is from the year 2003.   There are no records of any such evaluations having occurred during his childhood or indeed at any time before age 48.   The fact that Dr. Nielsen did not, in his recent discussions with his care providers, report having symptoms of ADD when he was a child does not mean that he had no such symptoms in his childhood.     More importantly, the majority of the psychological or psychiatric professionals who have evaluated Dr. Nielsen over the last several years have indeed diagnosed him with ADD.

58.     In denying the appeal, Unum also contended that because Dr. Nielsen had been looking for work in the period since his employment was terminated in May 2010, this meant that he had no functional impairment.   In other words, Unum concluded that because Dr. Nielsen *thought* he might be able to get work as a physician and tried to obtain such work, it necessarily followed that he was capable of getting and holding a job in his occupation.   By using this conclusion to support its denial of Dr. Nielsen's appeal, Unum was effectively punishing Dr. Nielsen for trying to find work.   Moreover, Unum's conclusion flies in the face of the evidence from Dr. Fordyce that Dr. Nielsen's only chance of maintaining employment

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington 98105
206-438-3737 • Facsimile 206-632-2540

as a physician would be in a setting that presents minimal distractions or interruptions and that is inherently structured and organized, or provides some accommodation that helps with his difficulties in attention, organization, and effective management of the administrative structure – a setting that Dr. Fordyce said would be difficult to find in standard clinical environments.

59.     In denying the LTD appeal, Unum also relied on selected statements by Dr. Nielsen to some of his medical care providers in late 2011, 2012, or 2013 about how he was feeling at that time.   Unum carefully chose a few statements indicating that Dr. Nielsen thought he was doing well and/or feeling well. Unum even sought to justify its denial of the LTD appeal by seizing on alleged statements by Dr. Nielsen in late 2011, 2012, or 2013 to the effect that he was feeling well because of the lack of work pressures and associated stress.  By citing these alleged statements, Unum was suggesting that Dr. Nielsen was suddenly "cured" and therefore was fully able to obtain and maintain employment as a physician.   These statements in no way establish that Dr. Nielsen had suddenly become capable of consistently demonstrating the high degree of focus, concentration, rapid mental processing, attention, organization, working memory, sequencing, and social perceptiveness necessary to obtain and hold a job as a physician.  In addition, these statements made in late 2011, 2012 and 2013 have no bearing on the question of whether he was disabled in 2010 and most of 2011.

60.     In addition, at the time that Unum denied the LTD appeal, Unum knew that the very nature of at least one of Dr. Nielsen's illnesses deprived him of the ability to understand and measure his own feelings and level of cognitive performance.  See discussion below of findings of Dr. Richard Adler.  In addition, in a telephone discussion with one of Unum's on-staff physicians, Dr. Debra Hughes noted that Dr. Nielsen has poor insight into his problems

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington  98105
206-438-3737 • Facsimile 206-632-2540

with employers or in interactions with others, and that he typically thinks he is doing fine when in fact he is not. Thus, it was both incorrect and unreasonable for Unum to conclude, based on Dr. Nielsen's own reports in late 2011, 2012 and 2013 about how he was feeling or doing, that Dr. Nielsen was capable of obtaining and maintaining employment as a physician.

61.     In addition to all of the information that was available to Unum when it denied the STD claim and when it initially denied the LTD claim, Unum also had before it when it denied the LTD appeal the October 29, 2012 evaluation prepared by Dr. Richard Adler. Dr. Adler is a Board-Certified Psychiatrist and a Clinical Instructor at the University of Washington Department of Psychiatry and Behavioral Sciences.

62.     Dr. Adler interviewed Dr. Nielsen, administered a series of psychological tests to him, and reviewed his records.

63.     Dr. Adler diagnosed Dr. Nielsen as suffering from Anxiety Disorder (with likely Posttraumatic Stress Disorder features -- including dissociative symptoms), Depressive Disorder, and Attention Deficit Disorder. Dissociative experiences are those in which a person may be involved in behavior but not fully recollect what has transpired. On the 100-point Global Assessment Functioning scale used to describe the patient's overall level of psychological, social, and occupational functioning, Dr. Adler rated Dr. Nielsen at 45.

64.     Dr. Adler concluded that Dr. Nielsen "has one or more psychiatric conditions (as provided above [in his diagnosis]) -- any of which alone and most certainly being present in combination, which materially make him unsuitable to practice Internal Medicine presently."

65.     Dr. Adler further concluded: "It is unlikely, in my opinion, that any reasonable medical facility would hire Dr. Nielsen to practice Internal medicine if they were made fully

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington 98105
206-438-3737 • Facsimile 206-632-2540

aware of his problems understanding his feelings, the feelings of others and his propensity to dissociate."

66.    Finally, Dr. Adler concluded: "In the context of the definition of disability provided by UNUM (i.e. 'you are limited from performing material and substantial duties of your regular occupation due to your sickness') it is my opinion that Dr. Nielsen IS disabled."

67.    With regard to Dr. Nielsen's inability to understand his own feelings and those of others, and propensity to dissociate, Dr. Adler noted that Dr. Nielsen suffered from alexithymia.   Alexithymia is the cognitive-affective disturbance that affects the way individuals experience and express their emotions – i.e., a diminished ability to identify and describe one's feelings.  As a profound illustration of this problem, Dr. Adler noted that while Dr. Nielsen's responses on some of the psychological tests reflected meaningful symptoms of impairment and distress, Dr. Nielsen at the same time characterized himself as functioning at a level of 80 out of 100 and as having a mood that was a 10 out of 10.  Dr. Adler described this contrast as a "stunning example of how seriously 'out of touch' Dr. Nielsen is with his feelings and circumstances."   Alexithymia also results in difficulty in distinguishing and interpreting the emotions of others. This is consistent with Dr. Hughes's observation that Dr. Nielsen had social awareness deficits and that he had difficulty picking up on social cues and therefore frequently had trouble adjusting behavior accordingly.  Dr. Adler also noted that alexithymia is significantly correlated with dissociative experiences.

68.    With regard to Dr. Nielsen's attention deficit disorder, Dr. Adler noted that Dr. Nielsen's results on the Conners' Continuous Performance Test-II better matched the clinical profile of persons with ADD than the non-clinical profile from the general population.  Dr. Adler also noted that on one of the other tests, the Validity Indicator Profile (VIP) non-verbal

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington  98105
206-438-3737 • Facsimile 206-632-2540

subtest, Dr. Nielsen took longer to complete the subtest than any other person Dr. Adler had ever tested. In addition, as the items in this test became more difficult, there was a prominent and progressive deterioration in Dr. Nielsen's performance.

69.     At the time it denied Dr. Nielsen's LTD appeal, Unum also had in its file a report from a vocational expert, John Fountaine. Mr. Fountaine holds a Master's Degree in Rehabilitation Counseling and has practiced continuously in the field of rehabilitation counseling and vocational assessment since 1992. Mr. Fountaine interviewed Dr. Nielsen and his wife, reviewed Dr. Nielsen's records, and discussed Dr. Nielsen's case with Dr. Adler. Mr. Fountaine concluded that the reason for Dr. Nielsen's loss of several jobs as a physician was his cognitive, psychological or emotional insufficiencies. In Mr. Fountaine's professional opinion, the kind of structured environment and sheltered work in which Dr. Nielsen might possibly succeed is simply not available. He further concluded that Dr. Nielsen is unemployable as a result of a complicated combination of cognitive, psychological and emotional impairments.

### THE UNITED STATES SOCIAL SECURITY ADMINISTRATION HAS FOUND THAT DR. NIELSEN HAS BEEN DISABLED SINCE MAY 28, 2010

70.     On May 13, 2013, the U.S. Social Security Administration determined under its rules that Dr. Nielsen has been continuously disabled since May 28, 2010. Through counsel, Dr. Nielsen advised Unum of the SSA decision. To be entitled to a Social Security Disability award, the claimant must suffer from an impairment or impairments "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington 98105
206-438-3737 • Facsimile 206-632-2540

hired if he applied for work." 42 U.S.C. § 423(d)(2)(A). This is a far more stringent standard than the standard under which Unum determined that Dr. Nielsen is *not* disabled. Despite being aware of the Social Security Disability award, Unum has not altered its position concerning its denial of LTD or STD benefits.

## FIRST CAUSE OF ACTION: BREACH OF CONTRACT AGAINST CHI AND FHS – STD BENEFITS

71.     Dr. Nielsen re-alleges, as if restated herein, paragraphs 1 through 70, above.

72.     The CHI STD Program constituted a contract between CHI and FHS's employees covered by the Program. Dr. Nielsen was covered by the STD Program. His labor for FHS – an affiliate of CHI – constituted consideration for CHI's promise to provide benefits under the STD Program.

73.     In consideration for Dr. Nielsen's promised labor, FHS promised to provide him with benefits under the terms of the STD Program. This exchange of promises constituted a contract.

74.     Dr. Nielsen performed all of his obligations under the contracts with CHI and FHS.

75.     Dr. Nielsen qualified for STD benefits under the terms of the STD Program. CHI and FHS breached their contracts with Dr. Nielsen by failing to pay Dr. Nielsen the benefits to which he was entitled under the STD Program.

76.     Dr. Nielsen incurred damages as a result of the breach of the contract by CHI and FHS. Under the terms of the STD Program, Dr. Nielsen is entitled to recover from CHI and FHS the full amount of his salary over the 90 day period that began 7 days after the date his disability began (May 21, 2010).

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington 98105
206-438-3737 • Facsimile 206-632-2540

## SECOND CAUSE OF ACTION: BREACH OF FIDUCIARY DUTY BY UNUM LIFE AND UNUM GROUP WITH RESPECT TO DENIAL OF STD BENEFITS

77.     Dr. Nielsen re-alleges, as if restated herein, paragraphs 1 through 76, above.

78.     As the Claims Administrator under the STD Program, Unum Life and Unum Group (collectively "Unum") owed participants in the STD Program, including Dr. Nielsen, a fiduciary duty.  Although Unum was not the insurer of the STD Program, it was the insurer of the LTD Plan.  Unum knew that if it determined that Dr. Nielsen was entitled to STD benefits, this would likely mean that Dr. Nielsen would be entitled to benefits under the LTD Plan and LTD policy.  Since Unum was the insurer of the LTD Plan and LTD policy, Unum had a strong financial incentive to deny Dr. Nielsen's STD claim.

79.     Unum breached its fiduciary duty by denying benefits to Dr. Nielsen in violation of the terms of the STD Program; by failing to use all reasonable care, skill, and diligence that a prudent person would have used in like circumstances; by failing to properly evaluate Dr. Nielsen's claim; by denying his claim based on the nonsensical notion that Dr. Nielsen was disabled only if his physician advised him to cease work (a requirement that was not part of the language of the STD Program); by ignoring or summarily dismissing medical evidence that established the validity of Dr. Nielsen's claim; and placing its own financial interests ahead of the interests of Dr. Nielsen.

80.     Dr. Nielsen incurred damages as a proximate result of Unum's breach of its fiduciary duty with respect to the STD Program.  Dr. Nielsen is entitled to recover from Unum the full amount of his salary over the 90 day period that began 7 days after the date his disability began (May 21, 2010).  In addition, Unum's breach of its fiduciary duty with respect to the STD Program proximately caused Dr. Nielsen to suffer mental anguish,

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington  98105
206-438-3737 • Facsimile 206-632-2540

suffering, emotional distress, and loss of peace of mind. If Unum had properly exercised its fiduciary duty by determining that Dr. Nielsen was entitled to STD benefits, such a determination would likely have resulted in a determination that he was also entitled to LTD benefits under the LTD Plan. Thus, Unum's breach of fiduciary duty in denying Dr. Nielsen's claim for STD benefits proximately caused Dr. Nielsen to incur attorneys' fees and costs as against the LTD Plan in appealing the denial of his claim for LTD benefits and in pursuing the present action against the LTD Plan.

## THIRD CAUSE OF ACTION: BREACH OF FIDUCIARY DUTY
## AS AGAINST CHI WITH RESPECT TO
## DENIAL OF STD BENEFITS

81. Dr. Nielsen re-alleges, as if restated herein, paragraphs 1 through 80, above.

82. CHI sponsored and administered the STD Program. As the administrator of the STD Program, CHI owed Dr. Nielsen a fiduciary.

83. Although it contracted with Unum to administer claims under the STD Program, CHI shared responsibility with Unum for deciding claims for STD benefits. CHI was the entity that would pay STD benefits when they were allowed.

84. CHI breached its fiduciary duty by denying benefits to Dr. Nielsen in violation of the terms of the STD Program; by failing to use all reasonable care, skill, and diligence that a prudent person would have used in like circumstances; by failing to properly evaluate Dr. Nielsen's claim; by denying his claim based on the nonsensical notion that Dr. Nielsen was disabled only if his physician advised him to cease work (a requirement that was not part of the language of the STD Program); by ignoring or summarily dismissing medical evidence that established the validity of Dr. Nielsen's claim; and placing its own financial interests ahead of the interests of Dr. Nielsen.

SECOND AMENDED COMPLAINT - 28

85.     Dr. Nielsen incurred damages as a proximate result of CHI's breach of its fiduciary duty with respect to the STD Program.  Dr. Nielsen is entitled to recover from CHI the full amount of his salary over the 90 day period that began 7 days after the date his disability began (May 21, 2010).  In addition, CHI's breach of its fiduciary duty with respect to the STD Program proximately caused Dr. Nielsen to suffer mental anguish, suffering, emotional distress, and loss of peace of mind.  If CHI had properly exercised its fiduciary duty by determining that Dr. Nielsen was entitled to STD benefits, such a determination would likely have resulted in a determination that he was also entitled to LTD benefits under the LTD Plan.  Thus, CHI's breach of fiduciary duty in denying Dr. Nielsen's claim for STD benefits proximately caused Dr. Nielsen to incur attorneys' fees and costs as against the LTD Plan in appealing the denial of his claim for LTD benefits and in pursuing the present action against the LTD Plan.

### FOURTH CAUSE OF ACTION: INSURANCE BAD FAITH AGAINST UNUM WITH RESPECT TO DENIAL OF STD BENEFITS

86.     Dr. Nielsen re-alleges, as if restated herein, paragraphs 1 through 85, above.

87.     Washington law, including RCW 48.30.010, imposes on an insurer a duty of good faith requiring that all its actions be actuated by good faith, requiring it to abstain from deception, and requiring it to practice honesty and equity in all matters related to the business of insurance.  The duty of good faith requires an insurer to conduct a reasonable investigation before refusing to pay a claim submitted by its insured or by an intended beneficiary of the insurance contract. An insurer must also have a reasonable justification before refusing to pay a claim.  An insurer who refuses to pay a claim, without conducting a reasonable investigation or without having a reasonable justification, fails to act in good faith.

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington  98105
206-438-3737 • Facsimile 206-632-2540

88.     Although Unum was not the insurer of the STD Program, it was the insurer of the LTD Plan.  Unum knew that if it determined that Dr. Nielsen was entitled to STD benefits, this would likely mean that Dr. Nielsen would be entitled to benefits under the LTD Plan and LTD policy, which Unum would be required to pay.  Since Unum was the insurer of the LTD Plan and LTD policy, Unum had a strong financial incentive to deny Dr. Nielsen's STD claim.  In denying Dr. Nielsen's STD claim, Unum acted to protect its interests as an insurer.

89.     As described above, Unum's denial of Dr. Nielsen's STD claim was unreasonable, frivolous and/or unfounded, and Unum failed to conduct a reasonable investigation before denying Dr. Nielsen's STD claim.

90.     Unum's insurance bad faith proximately caused Dr. Nielsen to suffer damage, including mental anguish, suffering, emotional distress, loss of benefits, and loss of peace of mind.  If Unum had acted in good faith by determining that Dr. Nielsen was entitled to STD benefits, such a determination would likely have resulted in a determination that he was also entitled to LTD benefits under the LTD Plan.  Thus, Unum's bad faith in denying Dr. Nielsen's claim for STD benefits proximately caused Dr. Nielsen to incur attorneys' fees and costs as against the LTD Plan in appealing the denial of his claim for LTD benefits and in pursuing the present action against the LTD Plan.

## FIFTH CAUSE OF ACTION: VIOLATION OF CONSUMER PROTECTION ACT BY UNUM WITH RESPECT TO DENIAL OF STD BENEFITS

91.     Dr. Nielsen re-alleges, as if restated herein, paragraphs 1 through 90, above.

92.     By failing to conduct a reasonable investigation before denying Dr. Nielsen's STD claim, by denying that claim without reasonable justification, by denying his claim based on the nonsensical notion that Dr. Nielsen was disabled only if his physician advised him to

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington  98105
206-438-3737 • Facsimile 206-632-2540

cease work (a requirement that was not part of the language of the STD Program), by ignoring or summarily dismissing medical evidence that established the validity of Dr. Nielsen's claim, and by placing its own financial interests ahead of Dr. Nielsen's interests (all as described above), Unum committed one or more unfair or deceptive acts or practices in violation of the Washington Consumer Protection Act (CPA).

93.     These unfair or deceptive acts or practices occurred in trade or commerce.

94.     These unfair or deceptive acts or practices impacted the public interest, since the Legislature has declared that the business of insurance impacts the public interest. RCW 48.01.030. Although Unum was not the insurer of the STD Program, it was the insurer of the LTD Plan. Unum knew that if it determined that Dr. Nielsen was entitled to STD benefits, this would likely mean that Dr. Nielsen would be entitled to benefits under the LTD Plan and LTD policy, which Unum would be required to pay. Since Unum was the insurer of the LTD Plan and LTD policy, Unum had a strong financial incentive to deny Dr. Nielsen's STD claim. In denying Dr. Nielsen's STD claim, Unum acted to protect its interests as an insurer. These unfair or deceptive acts or practices also impacted the public interest because they both had and now have the capacity to injure other persons – i.e., other persons who are covered by CHI's STD Program and whose STD benefits could be improperly denied by Unum.

95.     Unum's unfair or deceptive acts or practices have proximately caused injury to Dr. Nielsen's property by depriving him of STD benefits to which he is entitled. If Unum had determined that Dr. Nielsen was entitled to STD benefits, and by doing so had avoided unfair or deceptive acts or practices, such a determination would likely have resulted in a determination that he was also entitled to LTD benefits under the LTD Plan. Thus, Unum's unfair or deceptive acts or practices in denying Dr. Nielsen's claim for STD benefits

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington 98105
206-438-3737 • Facsimile 206-632-2540

1    proximately caused Dr. Nielsen to incur attorneys' fees and costs as against the LTD Plan in

2    appealing the denial of his claim for LTD benefits and in pursuing the present action against

3    the LTD Plan.

4        96.    Pursuant to the CPA, Dr. Nielsen is entitled to recover from Unum his actual

5    damages, treble damages, and his reasonable attorneys' fees and costs in this action.

### SIXTH CAUSE OF ACTION: VIOLATION OF CONSUMER PROTECTION ACT BY CHI WITH RESPECT TO DENIAL OF STD BENEFITS

7        97.    Dr. Nielsen re-alleges, as if restated herein, paragraphs 1 through 96, above.

9        98.    By failing to conduct a reasonable investigation before denying Dr. Nielsen's

10   STD claim, by denying that claim without reasonable justification, by denying his claim based

11   on the nonsensical notion that Dr. Nielsen was disabled only if his physician advised him to

12   cease work (a requirement that was not part of the language of the STD Program), by ignoring

13   or summarily dismissing medical evidence that established the validity of Dr. Nielsen's claim,

14   and by placing its own financial interests ahead of Dr. Nielsen's interests (all as described

15   above), CHI committed one or more unfair or deceptive acts or practices in violation of the

16   Washington Consumer Protection Act (CPA).

17       99.    These unfair or deceptive acts or practices occurred in trade or commerce.

18       100.   These unfair or deceptive acts or practices impacted the public interest

19   because they both had and now have the capacity to injure other persons – i.e., other persons

20   who are covered by CHI's STD Program and whose STD benefits could be improperly denied

21   by CHI.

22       101.   CHI's unfair or deceptive acts or practices have proximately caused injury to

23   Dr. Nielsen's property by depriving him of STD benefits to which he is entitled.  If CHI had

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington  98105
206-438-3737 • Facsimile 206-632-2540

determined that Dr. Nielsen was entitled to STD benefits, and by doing so had avoided unfair or deceptive acts or practices, such a determination would likely have resulted in a determination that he was also entitled to LTD benefits under the LTD Plan. Thus, CHI's unfair or deceptive acts or practices in denying Dr. Nielsen's claim for STD benefits proximately caused Dr. Nielsen to incur attorneys' fees and costs as against the LTD Plan in appealing the denial of his claim for LTD benefits and in pursuing the present action against the LTD Plan.

102.	Pursuant to the CPA, Dr. Nielsen is entitled to recover from CHI his actual damages, treble damages, and his reasonable attorneys' fees and costs in this action.

### SEVENTH CAUSE OF ACTION: VIOLATION OF INSURANCE FAIR CONDUCT ACT ("IFCA") BY UNUM WITH RESPECT TO DENIAL OF STD BENEFITS

103.	Dr. Nielsen re-alleges, as if restated herein, paragraphs 1 through 102, above.

104.	Although Unum was not the insurer of the STD Program, it was the insurer of the LTD Plan. Unum knew that if it determined that Dr. Nielsen was entitled to STD benefits, this would likely mean that Dr. Nielsen would be entitled to benefits under the LTD Plan and LTD policy, which Unum would be required to pay. Since Unum was the insurer of the LTD Plan and LTD policy, Unum had a strong financial incentive to deny Dr. Nielsen's STD claim. In denying Dr. Nielsen's STD claim, Unum acted to protect its interests as an insurer.

105.	Unum violated the Washington Insurance Fair Conduct Act (IFCA), RCW ch. 48.30, by, among other acts, denying Dr. Nielsen's STD claim without reasonable justification; denying his STD claim based on the nonsensical notion that Dr. Nielsen was disabled only if his physician advised him to cease work (a requirement that was not part of the language of the STD Program); ignoring or summarily dismissing medical evidence that

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington 98105
206-438-3737 • Facsimile 206-632-2540

established the validity of Dr. Nielsen's claim; unreasonably denying Dr. Nielsen's claim for STD benefits in violation of RCW 48.30.015; and refusing to pay his claim for STD benefits without conducting a reasonable investigation, in violation of WAC 284-30-330(4).

106.     Unum's violation of IFCA in denying Dr. Nielsen's claim for STD benefits proximately caused Dr. Nielsen to suffer damage, including loss of benefits, mental anguish, suffering, emotional distress, and loss of peace of mind.  If Unum had determined that Dr. Nielsen was entitled to STD benefits (and thereby had avoided violating IFCA), such a determination would likely have resulted in a determination that he was also entitled to LTD benefits under the LTD Plan.  Thus, Unum's violation of IFCA in denying Dr. Nielsen's claim for STD benefits proximately caused Dr. Nielsen to incur attorneys' fees and costs as against the LTD Plan in appealing the denial of his claim for LTD benefits and in pursuing the present action against the LTD Plan.

107.     Dr. Nielsen complied with RCW 48.30.015(8) by giving Unum and the Washington Insurance Commissioner notice of the basis for his IFCA claim more than twenty days before filing this Second Amended Complaint.  Unum has not changed its position and has not resolved the basis for Dr. Nielsen's IFCA claim.

### EIGHTH CAUSE OF ACTION: AS AGAINST THE LTD PLAN, UNUM, AND CHI – RECOVERY OF BENEFITS AND CLARIFICATION OF RIGHTS UNDER ERISA, 29 USC § 1132(a)(1)(B)

108.     Dr. Nielsen re-alleges, as if restated herein, paragraphs 1 through 107, above.

109.     Dr. Nielsen has been continuously disabled under the terms of the LTD Plan since May 21, 2010.  For the reasons set forth in detail above, Dr. Nielsen is entitled to LTD benefits.  Pursuant to 29 USC § 1132(a)(1)(B), Dr. Nielsen is entitled to judgment against the LTD Plan, Unum, and CHI for his LTD benefits.

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington  98105
206-438-3737 • Facsimile 206-632-2540

110.     This Court must apply a *de novo* standard of review concerning Unum's decision to deny LTD benefits.     A regulation issued by the Washington Insurance Commissioner prohibits discretionary clauses in disability policies.  This regulation declares in pertinent part:

> (1) No disability insurance policy may contain a discretionary clause. "Discretionary clause" means a  provision that purports to reserve discretion to an insurer, its agents, officers, employees, or designees in interpreting the terms of a policy or deciding eligibility for benefits, or requires deference to such interpretations or decisions . . .

WAC 284.96.012.

111.     The LTD policy was issued to CHI in Colorado.  Under Colorado law,

> (2) An insurance policy, insurance contract, or plan that is issued in this state that offers health or disability benefits shall not contain a provision purporting to reserve discretion to the insurer, plan administrator, or claim administrator to interpret the terms of the policy, contract, or plan or to determine eligibility for benefits.

> (3) An insurance policy, insurance contract, or plan that is issued in this state shall provide that a person who claims health, life, or disability benefits, whose claim has been denied in whole or in part, and who has exhausted his or her administrative remedies shall be entitled to have his or her claim reviewed de novo in any court with jurisdiction and to a trial by jury.

Colorado Revised Statutes ("CRS") § 10-3-1116.

112.     State statutes or regulations like WAC 284.96.012 and CRS § 10-3-1116, which prohibit discretionary clauses, are not preempted by ERISA.  *Standard Insurance Co. v. Morrison*, 584 F.3d 837 (9th Cir. 2009).

113.     In particular, neither WAC 284.96.012 nor CRS § 10-3-1116 is preempted by ERISA. *Landree v. Prudential Ins. Co. of America*, 833 F.Supp.2d 1266 (W.D.Wash., 2011); citing No. C10–484 RSL, *Murray v. Kane*, 2011 WL 617384 at *5 (W.D.Wash, Feb. 10, 2011); *McClenahan v. Metropolitan Life Ins. Co.*, 621 F.Supp.2d 1135 (D.Colo. 2009).  The provisions in the LTD policy purporting to grant Unum discretion to determine benefits constitute a violation of WAC 284.96.012 and CRS § 10-3-1116.  Accordingly, those

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington  98105
206-438-3737 • Facsimile 206-632-2540

provisions are invalid and have no effect. Because the LTD policy contains no legally effective clause conferring discretion on Unum, this court must apply a *de novo* standard of review concerning Unum's decisions.

114. Even if an abuse of discretion standard applies, Dr. Nielsen is entitled to benefits. Under the abuse of discretion standard, a plan administrator's decision will not be disturbed if reasonable. *Stephan v. Unum Life Ins. Co. of America*, 697 F.3d 917, 929 (9th Cir. 2012). This reasonableness standard requires deference to the administrator's benefits decision unless it is (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record. *Id*.

115. The degree of skepticism with which the court regards the insurer or administrator's decision when determining whether there was an abuse of discretion varies based upon the extent to which the decision appears to have been affected by a conflict of interest. *Id*.

116. Since Unum both determines disability benefits and pays for them, it has a direct financial incentive to deny claims. Unum's dual role as the entity that decides whether the claimant is entitled to benefits and if so the amount and duration, and its role as insurer, responsible for paying such benefits, creates a structural conflict of interest. *Id*. The weight to be accorded to a conflict of interest depends upon the likelihood that the conflict impacted Unum's decision making. *Id*.

117. Where circumstances suggest a higher likelihood that the conflict affected the benefits decision, the conflict should prove more important (perhaps of great importance). *Metropolitan Life Ins. Co. v. Glenn* , 554 U.S. 105, 117, 128 S.Ct. 2343 (2008); *Stephan*, 697 F.3d at 929.

118. The Supreme Court instructed in *Glenn* that a "conflict of interest ... should prove more important (perhaps of great importance) ... where an insurance company

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington 98105
206-438-3737 • Facsimile 206-632-2540

administrator has a history of biased claims administration." *Glenn*, 554 U.S. at 117. In so stating, *Glenn* cited a law review article "detailing such a history for one large insurer." *Id*. (citing John H. Langbein, Trust Law as Regulatory Law: The Unum/Provident Scandal and Judicial Review of Benefit Denials Under ERISA, 101 Nw. U.L.Rev. 1315, 1317–21 (2007)). That insurer was Unum. *Id*.

119.     Numerous courts, including the 9th Circuit, have commented on Unum's history "'of erroneous and arbitrary benefits denials, bad faith contract misinterpretations, and other unscrupulous tactics,'" *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 137 (2d Cir.2008) (quoting *Radford Trust v. First Unum Life Ins. Co.*, 321 F.Supp.2d 226, 247 (D.Mass.2004), rev'd on other grounds, *934 491 F.3d 21, 25 (1st Cir.2007)). In *Saffon v. Wells Fargo & Co. LTD Plan*, 522 F.3d 863, 867, the court referred to "the cupidity of one particular insurer, Unum–Provident Corp., which boosted its profits by repeatedly denying benefits claims it knew to be valid. Unum–Provident's internal memos revealed that the company's senior officers relied on ERISA's deferential standard of review to avoid detection and liability." See also *Radford Trust*, 321 F.Supp.2d at 247 n. 20 (collecting cases).

120.     This Court must regard Unum's decision with a high degree of skepticism.

121.     As the facts recited in detail above demonstrate, Unum, CHI, and the LTD Plan abused whatever discretion (if any) they were entitled to exercise in denying Dr. Nielsen's LTD claim.

122.     Dr. Nielsen is entitled to recover benefits under LTD Plan and the LTD Policy from the end of the "elimination period" (as described in the LTD Plan and the LTD policy) to the date of entry of judgment in this action, plus pre-judgment and post-judgment interest, and Dr. Nielsen's actual attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1).

123.     For the reasons set forth in detail above, Dr. Nielsen is entitled under to 29 USC § 1132 to an Order from this Court clarifying his rights under the LTD Plan, and

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington 98105
206-438-3737 • Facsimile 206-632-2540

declaring that Dr. Nielsen will remain disabled, as that term is defined in the LTD Plan and the LTD Policy, for the rest of his life. Dr. Nielsen is also entitled to recover future LTD benefits until he reaches age 65.

124. In the alternative, in the event the Court determines based on the existing administrative record that Dr. Nielsen is not entitled to LTD benefits to the full extent described above, the Court should reopen the administrative record in this case in order to consider additional evidence, including the determination by the U.S. Social Security Administration that under its rules Dr. Nielsen has been continuously disabled since May 28, 2010.

**NINTH CAUSE OF ACTION: AS AGAINST
CHI– FAILURE TO PROVIDE
INFORMATION AS REQUIRED BY ERISA**

125. Dr. Nielsen re-alleges, as if restated herein, paragraphs 1 through 124, above.

126. On June 19, 2013, Dr. Nielsen (through his attorney) wrote to CHI asking for documents and information that CHI, as Plan Administrator of the LTD Plan, was obligated to provide to him. In this letter Dr. Nielsen's attorney asked for (1) the summary plan description for the LTD Plan that was in effect on May 21, 2010; (2) the related insurance policy, issued by Unum to the LTD Plan, that was in effect on that date; and (3) all other documents pertaining to the LTD Plan that was in effect on that date. This letter also asked CHI whether the LTD Plan in effect on May 21, 2010 was a "church plan," whether CHI had made an election to subject the LTD Plan to ERISA, and when any such election was made. The letter also asked for a copy of the documents by which CHI made any such election known to the United States Department of Labor, the Secretary of the Treasury Department of the U.S., or any other federal agency. CHI never responded.

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington 98105
206-438-3737 • Facsimile 206-632-2540

127. On August 5, 2013, Dr. Nielsen's attorney again wrote to CHI, repeating his request for the information described above. Again, CHI never responded.

128. Pursuant to 29 USC § 1132(c)(1), CHI is liable to Dr. Nielsen in the minimum amount of $100/day for its failure to provide the requested documents and information.

## JURY DEMAND PURSUANT TO FED.R.CIV.P. 38(b)

Plaintiff hereby requests that all aspects of this suit other than those governed by ERISA be tried before a jury pursuant to Fed.R.Civ.P. 38(b), subject to the further order of this Court.

## PRAYER FOR RELIEF

WHEREFORE, having stated his causes of action against defendants, Dr. Nielsen prays for the following relief:

1. For benefits under the STD Program, including the full amount of his salary over the 90 day period that began 7 days after the date his disability began (May 21, 2010).

2. For all benefits to which he is entitled under the LTD Plan and LTD policy. These include the payment of monthly benefits of 60% of his gross monthly income just prior to the initial date of his disability, adjusted for inflation. Dr. Nielsen is entitled to these monthly benefits from the end of the "elimination period" (as described in the LTD Plan and the LTD policy) to the date of entry of judgment in this action and until he reaches age 65.

3. For judgment against CHI in the minimum amount of $100/day for its failure to provide requested documents and information under 29 USC § 1132(c)(1).

4. In the event that the Court finds based on the existing administrative record that Dr. Nielsen is not entitled to LTD benefits, for an order reopening the administrative record in this case to accept additional proof of Dr. Nielsen's disability, including but not

KEANE LAW OFFICES
100 NE Northlake Way, Suite 200
Seattle, Washington 98105
206-438-3737 • Facsimile 206-632-2540

limited to the determination by the U.S. Social Security Administration that under its rules Dr. Nielsen has been continuously disabled since May 28, 2010.

5.      In the event that the Court determines that the denial of his LTD claim should be reviewed under an abuse of discretion standard, for an order authorizing Dr. Nielsen to obtain discovery in this cause related to the extent to which Unum has a conflict of interest by being both administrator and payor of claims, and the likelihood that the conflict impacted Unum's decision making.

6       For actual damages on his causes of action for breach of fiduciary duty, insurance bad faith, violation of the CPA, and violation of IFCA in connection with the denial of his claim for STD benefits.

7.      For treble damages under the CPA and IFCA in connection with the denial of his claim for STD benefits.

8.      For prejudgment interest with respect to unpaid benefits through the time at which judgment for benefits is entered in favor of Dr. Nielsen.

9.      For actual attorneys' fees and costs (including expert witness fees) incurred in this action pursuant to 29 U.S.C. § 1132(g)(1), the CPA, IFCA, common law, recognized equitable grounds including the "ABC" rule and the rule permitting an award of attorneys' fees to the plaintiff in a successful action for breach of fiduciary duty, or any other applicable legal or equitable principles.

10.      For such other and further relief is the Court deems just and equitable.

Dated this 12th day of September, 2014.

KEANE LAW OFFICES

*s/ T. Jeffrey Keane*_____
T. Jeffrey Keane, WSBA #8465
Attorneys for Plaintiff Ronald D. Nielsen

SECOND AMENDED COMPLAINT - 40